# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| MGP ELECTRONICS, INC., ) | |
| ) | |
|     Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | Cause No. 1:19-CV-483-HAB |
| ) | |
| ELECTRONIC DESIGN & SALES, INC., ) | |
| ) | |
|     Defendant/Counter-Plaintiff. ) | |

## OPINION AND ORDER

This matter comes before the Court on Defendant/Counter-Plaintiff Electronic Design & Sales, Inc.'s ("EDS") Rule 72(a) Objection to the Order Entered January 24, 2020. (ECF No. 27). EDS "objects to the finding that [Plaintiff/Counter-Defendant MGP Electronics, Inc.'s ("MGP")] President's defamation arose from the parties' written contract." Specifically, EDS objects to Magistrate Judge Susan Collins' finding in her January 24, 2020, Opinion and Order (the "Opinion") (ECF No. 26) that "Defendant's defamation counterclaims are subject to the parties' arbitration agreement." (*Id*. at 6). MGP filed its Response Brief (ECF No. 28) on February 14, 2020. This matter is now ripe for review.

**A.  Background**

On September 6, 2019, MGP initiated suit against EDS alleging three causes of action arising out of EDS' alleged "bad faith" termination of an Agreements [sic] with Sub-Representatives (the "Agreement") as well as EDS' alleged failure to pay commissions due and owing under the Agreement. (*See*, *generally*, ECF No. 1). MPG alleged that the dispute was subject to an arbitration provision in the Agreement, and that it had already initiated the arbitration action.

(*Id*. at 3–4). MGP asked that the instant action be stayed pending an award in the arbitration action. (*Id*. at 4).

After several procedural filings that ultimately resulted in the instant action being transferred from the South Bend Division to this Court, EDS filed its Counterclaim and Jury Demand (ECF No. 14). EDS alleged, generally, that following its decision to terminate the Agreement MGP's President, Mark Percha ("Percha"), made a number of defamatory statements about EDS' President, Denny Foster ("Denny"), and Vice-President, Carol Foster ("Carol"). These statements were allegedly contained in three emails[1] that were attached as exhibits to the Counterclaim and a phone call between Percha and a third-party. The allegedly defamatory statements are set forth in the Counterclaim and are thematically consistent: Percha states that he was the reason for any success enjoyed by EDS and that Denny and Carol acted dishonestly when EDS terminated the Agreement. Percha's statements were certainly colorful: at various times he refers to Denny and/or Carol as: a "moral coward;" a liar; a "lazy asshole;" "bad people;" a "horrible liar and thief;" a "total fraud;" "shady;" "morally bankrupt;" and "scumbags." (ECF No. 14 at 2–5). Percha also accused Denny of stealing Percha's identity "with an email alias." (*Id*. at 5).

On December 10, 2019, MGP filed its Motion to Compel Arbitration of Defendant's Counterclaims and Stay this Action. (ECF No. 22). MGP argued that EDS' counterclaims fell under the arbitration provision of the Agreement which provided:

---

[1] MPG does not contest the authenticity of the emails. (*See* ECF No. 19 at 4–6).

> 10. ARBITRATION. Any controversy, claim or dispute arising out of or relating to this Agreement, including the formation, validity, or breach thereof, whether arising during or after the period of this Agreement, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and the decision of the arbitrator shall be final and binding upon the parties. Nothing in this paragraph, however, shall prevent the parties from seeking injunctive or other equitable relief from a state or federal court of competent jurisdiction. (b) The arbitration shall be conducted by one neutral arbitrator, who shall be selected in accordance with the rules of the American Arbitration Association. Any arbitration proceedings hereunder shall take place in Indiana. The arbitrator shall issue a written decision and set forth the reasons for said decision. Judgment upon the award rendered by the arbitrator may be entered in any federal or state court having competent jurisdiction thereof. The costs of arbitration, including the fees of the arbitrator, shall be borne equally. Each side shall bear its own attorneys' fees and costs, and punitive damages shall not be allowed.

(ECF No. 1-1 at 4). MGP characterized the arbitration provision as containing "the broadest possible language," and argued that all of the alleged defamatory statements "'relate to' the subject matter" of its breach of contract claim. (ECF No. 22 at 4). MGP also argued that, to the extent the counterclaims did not fall within the scope of the arbitration provision, this matter be stayed so that MGP could "avoid being subjected to discovery while simultaneously arbitrating" its claim against EDS. (*Id*. at 6).

EDS filed its Response to Motion to Compel Arbitration and Stay this Action (ECF No. 23) on December 12, 2019. EDS argued that its "defamation claims against MGP are wholly separate and distinct from MGP's contract claims against EDS. MGP's contract claims are arbitrable, EDS' defamation claims are not." (*Id*. at 5). Accordingly, EDS requested that its counterclaims be permitted to proceed in this Court.

Magistrate Collins entered her Opinion and Order (ECF No. 26) on January 24, 2020. Granting the Motion to Compel Arbitration, Magistrate Collins held:

> Here, the alleged defamation of Defendant's president and vice president appears to have arisen from the parties' business relationship, which in turn stems from the parties' written contract. As such, the Court finds that, given the expansive language used in the agreement, and the presumption in favor of arbitration, Defendant's defamation claims are subject to the arbitration agreement.

(*Id*. at 5).

3

**B.     Legal Analysis**

**1.     *Standard of Review***

Relying on Federal Rule of Civil Procedure 72(a), both parties assert that the proper standard for reviewing Magistrate Collins' Opinion and Order is a clearly erroneous or contrary to law standard. This is technically correct. Rule 72(a) provides:

> [w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a). Similarly, 28 U.S.C. § 636(b)(1)(A) provides:

> a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

Since this matter is not one of the eight exceptions listed in § 636(b)(1)(A), this Court's review is properly under the clearly erroneous or contrary to law standard. *See*, *e.g.*, *Wojtalewicz v. Pioneer Hi-Bred Intern., Inc.*, 944 F. Supp. 2d 715, 721 (D. Neb. 2013); *Vernon v. Qwest Communications Intern., Inc.*, 857 F. Supp. 2d 1135, 1141 (D. Colo. 2012).

Here, application of the "clearly erroneous or contrary to law" standard does not result in the extreme deference advocated by MGP. Arbitrability depends on the interpretation of the Agreement, a question of law for the Court. *Bechtold v. Physicians Health Plan of N. Ind., Inc.*, 19 F.3d 322, 325 (7th Cir. 1994). When review of a non-dispositive motion by a district judge

turns on a pure question of law, that review is plenary under the "contrary to law" standard. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010). Therefore, "there is no practical difference" between the "contrary to law" standard and the "de novo" standard for dispositive motions under Rule 72(b). *Id*.

Under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA"), arbitration agreements are treated as contracts and courts must enforce them according to their terms. 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443–44 (2006); *Penn v. Ryan's Family Steak Houses, Inc*., 269 F.3d 753, 758–59 (7th Cir. 2001). Moreover, the FAA "manifests a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)).

The enforceability of an arbitration agreement is governed by applicable state contract law; in this case, Indiana. *Penn*, 269 F.3d at 759 (citing *Gibson v. Neighborhood Health Clinics, Inc*., 121 F.3d 1126, 1130 (7th Cir. 1997)). Indiana courts apply ordinary contract principles to arbitration agreements. *Showboat Marina Casino P'ship v. Tonn & Blank Const*., 790 N.E.2d 595, 598 (Ind. Ct. App. 2003); *Mislenkov v. Accurate Metal Detinning, Inc*., 743 N.E.2d 286, 289 (Ind. Ct. App.2001). Like other contracts, however, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assoc's, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

A party seeking to compel arbitration must prove two things. First, it must demonstrate the existence of an enforceable arbitration agreement. Second, it must prove that the disputed matter is the type of claim that the parties agreed to arbitrate. *Roddie v. N. Am. Manufactured Homes, Inc*., 851 N.E.2d 1281, 1284 (Ind. Ct. App. 2006); *Safety Nat'l Cas. Co. v. Cinergy Corp*., 829

N.E.2d 986, 1000 (Ind. Ct. App. 2005). If the Court finds that an enforceable arbitration agreement exists and the parties contracted to submit their dispute to arbitration, the Court is required by statute to compel arbitration. 9 U.S.C. § 2.

**2.** *The Alleged Defamatory Statements Arise out of the Agreement*

The parties do not dispute the existence of an enforceable arbitration agreement. The Court's determination, then, necessarily turns on the question of whether the defamation claims are the type of claims the parties agreed to arbitrate.

"Indiana and federal law recognize a strong policy of favoring enforcement of arbitration agreements." *Bielfeldt v. Nims*, 805 N.E.2d 415, 417 (Ind. Ct. App. 2004). "When construing arbitration agreements, every doubt is to be resolved in favor of arbitration," and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Mislenkov*, 743 N.E.2d at 289 (citing *St. John Sanitary Dist. v. Town of Schererville*, 621 N.E.2d 1160, 1162 (Ind. Ct. App. 1993)). However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. *Id*. The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Showboat Marina*, 790 N.E.2d at 597. Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id*.

The provision at issue here provides that "[a]ny controversy, claim or dispute arising out of or relating to this Agreement, including the formation, validity, or breach thereof, whether arising during or after this Agreement, shall be settled by arbitration. . . ." (ECF No. 27-1 at 4). As MGP notes, this language is broad, with similar language being described as "all-encompassing"

by the Indiana Supreme Court. *PSI Energy, Inc. v. AMAX, Inc.*, 644 N.E.2d 96, 100 (Ind. 1994); *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir. 1999) (describing similar provisions as "extremely broad and capable of an expansive reach"). Broad arbitration clauses, like the one in the Agreement, necessarily create a presumption of arbitrability. *Kiefer*, 174 F.3d at 910.

Throughout its briefing to both the Magistrate and this Court, EDS has consistently pointed to two examples in support of its position that the counterclaims are outside the scope of the arbitration provision: Percha identifying himself as an engineer from "Magna" during a June 12, 2019, telephone call to EDS' new sub-representative; and statements in a June 13, 2019, email where Percha claimed that Denny and Carol were con artists and "stole [Percha's] identity." *See* ECF No. 23 at 4–5; ECF No. 27 at 5). Nonetheless, the Court has reviewed all of the alleged defamatory statements presented in EDS' Counterclaim in the context of both the Agreement and the interactions of the parties. Following that review, the Court has little trouble concluding that the statements arise out of and/or relate to the Agreement and the alleged breach thereof.

The first set of allegedly defamatory statements are included in a September 17, 2015, email from Percha to Denny and three individuals associated with EDS' primary supplier. (ECF No. 14-1). What is particularly relevant about this email is that it is a direct response to Denny's email terminating the Agreement, sent just six minutes later. (*Id.*). Given this context, the Court must conclude either that the September 17, 2015, email relates to the termination of the Agreement, rendering the claims arising out of that email arbitrable, or that Percha elected to send a page-long *non sequitur* just minutes after being fired. Given that the entire first paragraph of the email is a direct response to Denny's bases for termination, the Court concludes that the former is the case. Moreover, the actual statements by Percha in the email relate entirely to the relative

7

interactions with customers between himself and Denny. Percha asserts that he "control[s] the customers" through hard work, and that Denny is a "moral coward" who steals from the customers. The solicitation of customers is the primary purpose and subject of the Agreement. (*See* ECF No. 1-1 at 2) ("WHEREAS, Manufacturers' Representative and Sub-Representative desire that Sub-Representative represent the Producers within the Territory in accordance with the terms . . . in the applicable Sales Agreement and this Agreement."). The statements in the September 17, 2015, email plainly relate to the Agreement.

The second set of statements are contained in a May 12, 2016, email from Percha to one of EDS' suppliers. Here, all the allegedly defamatory statements follow a statement by Percha that he is "prepared to file by lawsuit VS [sic] Denny," presumably referencing this lawsuit. In that context, it is easy to conclude that the reference to Percha "getting fucked by Denny" does not relate to a sexual act but instead to the alleged wrongful termination of the Agreement. Any and all statements in the May 12, 2016, email relate to the Agreement and its alleged breach, and claims arising out of those statements are arbitrable.

The third set of statements were made during an alleged June 12, 2019, telephone call between Percha and EDS' new sub-representative. Unlike the emails, the content of this telephone call is disputed. (ECF No. 19 at 5). EDS' primary concern about this telephone call is that Percha represented himself as an engineer from "Magna," rather than provide his true identity. This fact might be relevant to EDS' ability to make out a defamation claim, *see Davidson v. Perron*, 716 N.E.2d 29 (Ind. Ct. App. 1999), but the Court struggles to see how it changes the subject of the statements. True, Percha's statements in the telephone call do not expressly relate to the dispute between EDS and MGP. However, they certainly implicate that dispute, as seemingly the only basis Percha has to insult Denny and Carol is the dispute over the termination of the Agreement.

The statements in the telephone call relate to the Agreement and claims arising therefrom are arbitrable.

Finally, EDC relies on an email sent by Percha on June 13, 2019, again to EDS' new sub-representative. EDS focuses on Percha's reference to Denny and Carol as "con artists," and his claim that Denny stole Percha's identity. Again, these statements must be viewed in the broader context of the email. The June 13, 2019, email expressly references Percha's termination and this lawsuit. The aspersions toward Denny and Carol must be read in that context. Percha is clearly telling his side of the termination dispute, and his statements relate to that dispute. Under the broad language of the arbitration provision, any claims arising out of these statements are arbitrable.

By entering this Opinion and Order, the Court does not weigh in on the merits of EDS' counterclaims. Nor does the Court endorse Percha's unprofessional conduct. But this Court must find, from the context in which the statements were made, that all allegedly defamatory statements related to the termination and alleged breach of the Agreement. Any claim arising out of those statements, including EDS' counterclaims, fall under the broad language of the arbitration provision of the Agreement and must be arbitrated.

**C.    Conclusion**

For the foregoing reasons, this Court OVERRULES EDS' Rule 72(a) Objection to the Order Entered January 24, 2020 (ECF No. 27).

SO ORDERED on March 2, 2020.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT